1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  DARREN J. ROBBINS (168593)
   DAVID C. WALTON (167268)
3  DAVID T. WISSBROECKER (243867)
   655 West Broadway, Suite 1900
4  San Diego, CA 92101
   Telephone: 619/231-1058
5  619/231-7423 (fax)
   darrenr@rgrdlaw.com
6  davew@rgrdlaw.com

7  Attorneys for Plaintiff

8  [Additional counsel appear on signature page.]

9            UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11                WESTERN DIVISION

12  ALAN STEVENS, Individually and on      )  VIA FAX
    Behalf of All Others Similarly Situated, )
13                                          )
                                            )  CV10 9011 PA   VBKx
14                      Plaintiff,          )
                                            )  CLASS ACTION
15     vs.                                  )
                                            )  COMPLAINT FOR VIOLATION OF
16  RINO INTERNATIONAL                      )  THE FEDERAL SECURITIES LAWS
    CORPORATION, ZOU DEJUN, QIU             )
17  JIANPING, JENNY LIU, BEN WANG,          )
    YU LI, KENNITH C. JOHNSON,              )
18  QUAN XIE and LI ZEJIN,                  )
                                            )
19                      Defendants.         )
                                            )  DEMAND FOR JURY TRIAL
20  _____)

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

1.  Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act"). The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

2.  Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made into or issued from this District. RINO International Corporation ("RINO" or the "Company") is headquartered in Dalian, China.

3.  In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets. RINO stock trades in an efficient market on the NASDAQ Global Market.

**INTRODUCTION**

4.  This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of RINO between February 17, 2009 and November 12, 2010, inclusive (the "Class Period"), against RINO and certain of its officers and/or directors for violations of the 1934 Act. These claims are asserted against RINO and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the Securities and Exchange Commission ("SEC").

5.    RINO, through its subsidiaries, is engaged in the business of designing, manufacturing, installing and servicing wastewater treatment and flue gas desulphurization equipment for use in China's iron and steel industry and anti-oxidation products and equipment designed for use in the manufacture of hot rolled steel plate products.

6.    During the Class Period, defendants issued materially false and misleading statements regarding the Company's business practices and financial results. Specifically, defendants failed to disclose that the Company's financial results were grossly inflated and were inconsistent with results reported by RINO to tax authorities. As a result of defendants' false statements, RINO stock traded at artificially inflated prices during the Class Period, reaching a high of $34.25 per share on November 30, 2009. As a result of this inflation, RINO was able to consummate a registered direct offering of nearly 3.3 million shares of its common stock at $30.75 per share in December 2009.

7.    During the Class Period, RINO reported false financial results that would have permitted defendants to receive shares from an escrow-held account based on RINO's purported results.

8.    On November 10, 2010, Muddy Waters, LLC ("Muddy Waters"), a small research firm, posted an unfavorable report about RINO's business practices, claiming that the Company is a sham that had been engaged in activities ranging from vastly inflating revenue to fabricating customer relationships and allowing its management to

use company money to buy a luxury home in Orange County, California. Additionally, Muddy Waters reported a sizeable discrepancy between the Company's revenue of $192.6 million reported in its fiscal 2009 Form 10-K filed with SEC and its revenue of $11 million reported in its annual report for fiscal 2009 filed with the China State Administration of Industry and Commerce ("SAIC").

9.     After this news, RINO's stock collapsed $2.34 per share to close at $13.18 per share on November 11, 2010, a one-day decline of 15% on high volume.

10.     Then on November 15, 2010, before the market opened, RINO announced extremely disappointing third quarter 2010 results with revenues of $52.7 million and net income of $8.8 million, just over half the net income reported on the prior year. RINO also reduced its revenue forecast for 2010 from $221-$229 million to $203-$211 million. Even worse was the lack of a credible defense to the Muddy Waters allegations. In fact, analysts said their own analyses were in line with the findings of Muddy Waters.

11.     On this news, RINO's stock collapsed to $7.55 per share on volume of 7.7 million shares.

12.     The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     RINO's financial results reported to the SEC and investors were inconsistent with amounts reported to Chinese tax authorities; and

- 3 -

(b)    RINO's reported financial statements were grossly inflated by including revenue it had not earned.

13.    As a result of defendants' false statements and omissions, RINO's common stock traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 77% from their Class Period high of $34.25.

## PARTIES

14.    Plaintiff Alan Stevens purchased RINO common stock as described in the attached certification and was damaged thereby.

15.    Defendant RINO is engaged in the business of designing, manufacturing, installing and servicing wastewater treatment and flue gas desulphurization equipment for use in China's iron and steel industry and anti-oxidation products and equipment designed for use in the manufacture of hot rolled steel plate products.

16.    Defendant Zou Dejun ("Zou") is, and at all relevant times was, Chief Executive Officer ("CEO") and a director of RINO.

17.    Defendant Qui Jianping ("Qui") is, and at all relevant times was, Chairman of the Board of RINO.

18.    Defendant Jenny Liu ("Liu") was Chief Financial Officer ("CFO") of RINO from June 2009 through April 2010.

-4-

19.     Defendant Ben Wang ("Wang") has served as CFO of RINO since April 2010.

20.     Defendant Yu Li ("Yu") is, and at all relevant times was, Finance Manager of RINO.

21.     Defendant Kennith C. Johnson ("Johnson") is, and at all relevant times was, a director of RINO.

22.     Defendant Quan Xie ("Quan") is, and at all relevant times was, a director of RINO.

23.     Defendant Li Zejin ("Li") is, and at all relevant times was, a director of RINO.

24.     The defendants referenced above in ¶¶16-23 are referred to herein as the "Individual Defendants."

25.     The Individual Defendants, because of their positions with the Company as senior executive officer, agents, and/or directors or RINO, possessed the power and authority to control the contents of RINO's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the

1  public, the Individual Defendants knew that the adverse facts specified herein had not

2  been disclosed to and were being concealed from the public and that the positive

3

4  representations being made were then materially false and misleading. The Individual

5  Defendants are liable for the false statements pleaded herein.

6
## FRAUDULENT SCHEME AND COURSE OF BUSINESS

7         26.    Defendants are liable for: (i) making false statements; or (ii) failing to

8
9  disclose adverse facts known to them about RINO. Defendants' fraudulent scheme

10  and course of business that operated as a fraud or deceit on purchasers of RINO

11
   common stock was a success, as it: (i) deceived the investing public regarding RINO's
12

13  prospects and business; (ii) artificially inflated the price of RINO common stock; (iii)

14  permitted the Company to complete a registered direct offering of nearly 3.3 million

15
   shares of RINO common stock for proceeds of approximately $100 million; and (iv)
16

17  caused plaintiff and other members of the Class to purchase RINO common stock at

18  inflated prices.

19
## CLASS ACTION ALLEGATIONS

20         27.    Plaintiff brings this action as a class action pursuant to Rule 23 of the

21

22  Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise

23  acquired RINO common stock during the Class Period (the "Class"). Excluded from

24
   the Class are defendants and their families, the officers and directors of the Company,
25

26  at all relevant times, members of their immediate families and their legal

27

28

representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  RINO has over 28.6 million shares of stock outstanding, owned by hundreds of persons.

29.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        (a)     whether the 1934 Act was violated by defendants;

        (b)     whether defendants omitted and/or misrepresented material facts;

        (c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

        (d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

        (e)     whether the price of RINO common stock was artificially inflated; and

        (f)     the extent of damage sustained by Class members and the appropriate measure of damages.

- 7 -

30.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

31.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**BACKGROUND**

33.    RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China.  The Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization equipment primarily for use in the iron and steel industry and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products.  Its products include the Lamella Inclined Tube Settler Waste Water Treatment System, which comprise industrial water treatment equipment, effluent-condensing equipment sets, solid and liquid abstraction dewatering equipment, and coal gas dust removal and cleaning equipment; the Circulating, Fluidized Bed, Flue Gas Desulphurization System that removes particulate sulphur from flue gas emissions generated by the sintering process in the production of iron and steel; and the High Temperature Anti-Oxidation System for hot rolled steel, a set of products and a mechanized system that reduces oxidation-related output losses in the

- 8 -

production of continuous cast hot rolled steel.  In addition, the Company offers contract machining services for third-party industrial enterprises.

34.     RINO became a publicly traded corporation through a reverse merger with a shell company called Applied Biometrics.  RINO operates through its subsidiary Innomind Group Limited, a British Virgin Islands corporation, and a variable interest entity ("VIE") called Dalian RINO ("Dalian RINO").  Dalian RINO is owned by defendants Zou and Qui – husband and wife founders.  RINO reported dramatically increasing revenues due to government-mandated pollution control standards, with revenues going from $63.4 million in fiscal 2007 to $192.6 million in fiscal 2009.

35.     Pursuant to an agreement dated October 5, 2007, 5,580,000 shares of RINO common stock beneficially owned by defendants Zou and Qui were deposited into an escrow account in order to secure RINO's obligation under the Securities Purchase Agreement and Make Good Escrow Agreement, dated October 5, 2007, among the Company and certain investors, pursuant to which RINO was required to deliver to such investors the shares in the escrow account in the event the Company failed to achieve certain after-tax income targets.

36.     Thus, defendants were motivated to report favorable results so as to receive millions of shares of RINO stock held in escrow.

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

37.    On February 17, 2009, RINO issued a press release reporting its expected fourth quarter and year-end 2008 earnings results.  Additionally, RINO announced its fiscal year 2009 guidance, indicating projected revenue would exceed $176 million in 2009.  Defendant Zou stated in part:

> "We are extremely pleased with our results for 2008 and our ability to surpass previously issued guidance for the fourth quarter.  In addition, we expect robust revenue growth to continue during 2009 supported by increased mandates, tax incentives and funding from the Chinese government to reduce sulphur emissions and improve energy efficiency and utilization for the iron and steel industry . . . .  As key components of our product mix, *we expect 2009 revenues for waste water treatment, desulphurization and anti-oxidation revenues to grow by approximately 50%, 10% and 300%*, respectively, compared with 2008 while maintaining a similar margin profile.  Recent moves from the Chinese government, including monetary policy changes and the stimulus plan have provided the opportunity for better access to capital from local Chinese banks to support our growth objectives. . . .  Improved working capital and our strong brand reputation, coupled with stringent enforcement of government regulations and aggressive tax credits and funding for environment services, are the key essentials to drive incremental growth for RINO in 2009."

38.    On May 15, 2009, RINO issued a press release reporting its first quarter 2009 earnings results.  The Company reported net income of $12.5 million, or $0.50

1    diluted earnings per share ("EPS"), and revenue of $35.6 million for the quarter

2    ending March 31, 2009.

3

4          39.    On August 10, 2009, RINO issued a press release reporting its second

5    quarter 2009 earnings results. The Company reported net income of $9.9 million, or

6    $0.39 diluted EPS, and revenue of $40.7 million for the quarter ending June 30, 2009.

7

8          40.    On November 13, 2009, RINO issued a press release reporting its third

9    quarter 2009 earnings results. The Company reported net income of $19.7 million, or

10   $0.78 diluted EPS, and revenue of $63.3 million for the quarter ending September 30,

11
12   2009.

13         41.    On December 7, 2009, RINO completed its definitive agreements with

14
15   several institutional investors for a registered direct offering of nearly 3.3 million

16   shares of common stock to raise capital of approximately $100 million. The Company

17   reported proceeds of this transaction would be used for working capital requirements.

18
19         42.    On March 31, 2010, RINO filed its Form 10-K for its fourth quarter and

20   fiscal year 2009. The Company reported net income of $13.5 million, or $0.53 diluted

21   EPS, and record revenue of $53.0 million for the fourth quarter of 2009. The

22
23   Company further reported net income of $56.4 million, or $2.26 diluted EPS, and

24   revenue of $192.6 million for the year ended December 31, 2009. The Form 10-K

25   also emphasized the predictability of RINO's earnings:

26
           Accordingly, environmental protection and remediation is a
27
           relatively new industry in the PRC. Nonetheless, like the Chinese
28

- 11 -

1   economy, it is rapidly growing – we estimate that in the next 5 years,

2   there is a wastewater remediation market of $260 million per year and

3   the desulphurization market will grow at approximately 5% annually.

4   Further, the market for the Company's products is highly regulated by

5   the central PRC government, which sets specific pollution output targets

6   for industrial enterprises. *For this reason, we believe that the demand*

7   *for our products is predictable*, and will follow the growth of the PRC's

8   iron and steel industry and government-mandated pollution control

9   standards that are being made more stringent annually. We also believe

10  that our revenue and profitability growth to date arises from these same

11  factors. Our revenues increased by 38.3% to $192.6 million in fiscal

12  year 2009 and by 119.8% to $139.3 million for fiscal year 2008 from

13  $63.4 million in fiscal year 2007. Our gross profit increased by 33.1% to

14  $72.3 million in fiscal year 2009, compared to an increase of 78.3% to

15  $54.3 million in fiscal year 2008 and the gross profit of $30.5 million for

16  fiscal year 2007. Our income from operations increased by 142.9% to

17  $55.3 million in fiscal year 2009 and by 44.0% to $22.8 million in fiscal

18  year 2008 from $15.8 million. Our after-tax net income increased by

19  165.0% to $56.4 million and 108.3% to $21.3 million in fiscal years

20  2009 and 2008, respectively, compared to that of $10.2 million in fiscal

21  year 2007.

22  43.   On May 17, 2010, RINO issued a press release reporting its first quarter

23
24  2010 financial results. The Company reported net income of $8.5 million, or $0.30

25  diluted EPS, and revenue of $47.9 million for the quarter ended March 31, 2010.

26  44.   On August 16, 2010, RINO issued a press release reporting its second

27  quarter 2010 financial results. The Company reported net income of $15.5 million, or
28

- 12 -

1   $0.54 diluted EPS, and revenue of $65.4 million for the quarter ended June 30, 2010.

2   The press release stated in part:

3

4          "We are pleased to announce strong results for the second quarter

5   2010," said Mr. Dejun Zou, director and chief executive officer of

6   RINO. "The robust year-over-year revenue increase was primarily driven

7   by steady growth in our two main business segments, core flue gas

8   desulphurization and waste water treatment systems. Going forward, the

9   primary objective for our core business segments is to continue

10  expanding our market share and enhance gross margin. At the same time,

11  we will build out other business segments that are synergistic extensions

12  of our core competence. Municipal sludge treatment, for instance, is an

13  area of our near-term focus."

14          "China's clean technology industry is growing rapidly with

15  government support. Policies and guidelines that call for increasingly

16  stricter standards for industrial waste treatment continuously drive up

17  demand for a greater scope of treatments as well as volume. RINO's

18  future success depends on our ability to continue enhancing our

19  production capacity and technological capability to keep up with

20  industry developments. *We are confident that with our focused efforts*

21  *on these fronts and effective execution we will continue to be a leading*

22  *player in the industry of our fundamental business segments and*

23  *successfully expand into high growth segments in the future*," Mr. Zou

24  concluded.

25          Mr. Ben Wang, chief financial officer of RINO, added, "Both top

26  and bottom line results were very strong in the second quarter and we are

27  on track to achieve our targets for fiscal year 2010. For the rest of the

28  year we will continue to enhance operational systems while investing for

1  sustainable growth in the long term. We are also progressing according

2  to our schedule to further strengthen our internal control and to continue

3  to comply with Sarbanes Oxley requirements."

4      45.    On November 9, 2010, RINO's stock closed at $15.52 per share.

5      46.    On November 10, 2010, Muddy Waters posted an unfavorable report

6
7  about RINO's business practices, claiming that the Company is a sham that had been

8  engaged in activities ranging from vastly inflating revenue to fabricating customer

9
10 relationships and allowing its management to use company money to buy a luxury

11 home in Orange County, California.  Additionally, Muddy Waters reported a sizeable

12 discrepancy between the Company's revenue of $192.6 million reported in its fiscal

13
14 2009 Form 10-K filed with the SEC and its revenue of $11 million reported in its

15 annual report for fiscal 2009 filed with the SAIC.

16     47.    After this news, RINO's stock collapsed $2.34 per share to close at

17
18 $13.18 per share on November 11, 2010, a one-day decline of 15% on high volume.

19     48.    Then on November 15, 2010, before the market opened, RINO

20 announced extremely disappointing third quarter 2010 results with revenues of $52.7

21
22 million and net income of $8.8 million, just over half the net income reported on the

23 prior year.  RINO also reduced its revenue forecast for 2010 from $221-$229 million

24 to $203-$211 million.  Even worse was the lack of a credible defense to the Muddy

25
26 Waters allegations.  In fact, analysts said their own analyses were in line with the

27 findings of Muddy Waters.

28

- 14 -

49.     On this news, RINO's stock collapsed to $7.55 per share on volume of 7.7 million shares.

50.     The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

        (a)     RINO's financial results reported to the SEC and investors were inconsistent with amounts reported to Chinese tax authorities; and

        (b)     RINO's reported financial statements were grossly inflated by including revenue it had not earned.

51.     As a result of defendants' false statements and omissions, RINO's common stock traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 77% from their Class Period high of $34.25 on November 30, 2009.

## LOSS CAUSATION/ECONOMIC LOSS

52.     During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of RINO common stock and operated as a fraud or deceit on Class Period purchasers of RINO common stock by misrepresenting the Company's business and prospects. Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of RINO common stock fell precipitously, as the prior artificial inflation came

out of the price over time.  As a result of their purchases of RINO common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

### NO SAFE HARBOR

53.    RINO's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

54.    The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of RINO who knew that the FLS was false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

### COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

55.    Plaintiff incorporates ¶¶1-54 by reference.

56.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of RINO common stock during the Class Period.

58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for RINO common stock. Plaintiff and the Class would not have purchased RINO common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

- 17 -

1

## COUNT II

2

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

3

4        59.    Plaintiff incorporates ¶¶1-58 by reference.

5        60.    The Individual Defendants acted as controlling persons of RINO within

6

7    the meaning of §20(a) of the 1934 Act.  By reason of their positions with the

8    Company, and their ownership of RINO common stock, the Individual Defendants

9    had the power and authority to cause RINO to engage in the wrongful conduct

10

11   complained of herein.  RINO controlled the Individual Defendants and all of its

12   employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the

13   1934 Act.

14

### PRAYER FOR RELIEF

15       WHEREFORE, plaintiff prays for judgment as follows:

16

17       A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ.

18   P. 23;

19

20       B.     Awarding plaintiff and the members of the Class damages, including

21   interest;

22

23       C.     Awarding plaintiff reasonable costs and attorneys' fees; and

24       D.     Awarding such equitable/injunctive or other relief as the Court may deem

25   just and proper.

26

27

28

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury.

3    DATED: November 18, 2010              ROBBINS GELLER RUDMAN
                                            & DOWD LLP
4                                           DARREN J. ROBBINS
                                            DAVID C. WALTON
5                                           DAVID T. WISSBROECKER

6

7                                           DAVID C. WALTON

8                                           655 West Broadway, Suite 1900
9                                           San Diego, CA 92101
                                            Telephone: 619/231-1058
10                                          619/231-7423 (fax)

11                                          LAW OFFICES OF CURTIS V.
                                             TRINKO, LLP
12                                          CURTIS V. TRINKO
                                            16 West 46th Street, 7th Floor
13                                          New York, NY 10036
                                            Telephone: 212/490-9550
14                                          212/986-0158 (fax)

15                                          Attorneys for Plaintiff

16    S:\CptDraft\Securities\Cpt RINO_CDCA.doc

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

## CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

I, ALAN G. STEVENS, hereby certify as follows:

1.    I have reviewed a complaint filed with regard to  RINO International Corp., being brought under the federal securities laws, and have authorized the filing of such an action on my behalf, and/or my inclusion in a motion for lead plaintiff in said litigation.

2.    Plaintiff did not purchase, or otherwise acquire, the securities of RINO International Corp., ("RINO") that  are the subject of this action, at the direction of plaintiff's counsel, or in order to participate in any private action arising under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, and will provide testimony at a deposition and/or at trial, if necessary.

4.    Plaintiff's transactions in the securities that are the subject of this litigation all occurred in 2010 and are listed below:

A).  Plaintiff's initial transaction in RINO common stock was on 4/1/10, with a purchase of 500 shares at $22.75 per share;

B).  Plaintiff's additional transaction in RINO common stock on 4/1/10 was a purchase of 600 shares at $22.036 per share;

C).  Plaintiff had an additional purchase of 500 shares of RINO common stock on 4/7/10 at $20.00 per share;

D).  Plaintiff purchased an additional 1,600 shares of RINO common stock on 11/10/10 at $13.018 per share; and

E).  Plaintiff sold his entire 3/200 shares of RINO common stock on 11/15/10 at $9.06 per share.

5.    During the three years prior to the date hereof, plaintiff has not filed an action in which he has sought to serve, or has served, as a representative party for a class in any action filed under the federal securities laws, other than Alan G. Stevens v. Sembcorp Utilities Ptd.

Ltd., Civil Action No. 10-CV-04481(SHS), pending in the U.S. District Court, Southern District of New York.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond his pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 18 th day of November, 2010 at Atlanta, Georgia.

ALAN G. STEVENS

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ALAN STEVENS, Individually and on Behalf of All Others Similarly Situated,

PLAINTIFF(S)

v.

RINO INTERNATIONAL CORPORATION, ZOU DEJUN, QIU JIANPING, JENNY LIU, BEN WANG, (See ATTACHMENT A)

DEFENDANT(S).

**CASE NUMBER**

CV10 9011 PA VBKx

**SUMMONS**

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, David C. Walton _____, whose address is Robbins Geller, et al., 655 West Broadway, Suite 1900, San Diego, CA  92101 _____, If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___NOV 2 2 2010___

By: _____
Deputy Clerk

(Seal of the Court)

**CHRISTOPHER POWERS**

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                SUMMONS

ATTACHMENT A

Defendants (cont.)

YU LI, KENNITH C. JOHNSON, QUAN XIE and LI ZEJIN,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>ALAN STEVENS, Individually and on Behalf of All Others Similarly Situated | DEFENDANTS<br>RINO INTERNATIONAL CORPORATION, ZOU DEJUN, QIU JIANPING, JENNY LIU, BEN WANG, YU LI, KENNETH C. JOHNSON, QUAN XIE and LI ZEJIN |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>David C. Walton<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900, San Diego, CA 92101  619/231-1058 | Attorneys (If Known) |

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☒ Yes  ☐ No        ☐ MONEY DEMANDED IN COMPLAINT: $ _____

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Violation of the Federal Securities Laws 15 U.S.C. §§78j(b) 78t(a)

VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV10 9011

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): 2:10-cv-08695-VBF-VBK

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☑A. Arise from the same or closely related transactions, happenings, or events; or
  ☑B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☑C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Georgia |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | China |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date November 18, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 9011 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY